STATE<br>v.<br>BALLERIO.

have power to pervert or ignore the law itself by their decision, and no penalty awaits them. But, as they cannot trample on the law without spurning the obligation of their oaths, so they cannot in general overrule the authoritative exposition of the law given by the Judge without endangering the cause of justice and forgetting the theory upon which its administration is based. That theory is, that the complicated duties of a criminal trial should be so parcelled out amongst various officers as to give to no one man or set of men unqualified and arbitrary control over the life and liberty of the citizens, and the welfare of the State.

After hearing the argument of both sides, the Judge, unbiassed by interest or passion, is expected to declare the law; the jury to apply it to the facts which they find. They may safely take the law from the Judge, for if he misstates it, to the prejudice of the prisoner, the latter is not without remedy; his exceptions may be heard in another tribunal, after the excitement of the hour is past. But the error of the jury is subject to no such revision.

The reason why we set aside verdicts for an erroneous charge of the Judge is, that the law presumes the charge to have exercised a controlling influence upon the minds of jurors.

It is ordered that the judgment appealed from be affirmed, with costs.

MERRICK, C. J., dissenting. I think the instructions should have been given the jury, as prayed for. It is in accordance with the common law, as I think it has been understood in this State, and also in harmony with the practice in civil cases. C. P., 520; 12 R. R., 165.

Experienced counsel are often unwilling to prejudice their cause in the minds of the jury by a seeming admission that the charge of the Judge is against the accused, even where they think he is in some respects in error. I think, therefore, the accused is entitled to the instructions asked, without excepting to the charge in other particulars, and that the case ought to be remanded for a new trial.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## SUCCESSION OF JOSEPH JEWELL.

Where the purchaser of land failed to give his notes according to the terms of sale, he cannot set up the prescription of five years.

A debtor said he would " settle provided his claims were allowed." *Held:* insufficient to interrupt prescription.

APPEAL from the District Court, Ninth District, Parish of Pointe Coupée, *Cooley*, J. *W. H. Cooley*, for appellant. *Provosty*, for appellee.

VOORHIES, J. The opponent is appellant from a judgment rejecting her claim against the succession of the late *Joseph Jewell*.

The appellee has filed a motion to dismiss the appeal on grounds which we consider untenable. The addition of the word "administratrix" to the appellant's name by the Clerk may be treated as mere surplusage. Her motion for the appeal, and the bond executed by her, sufficiently indicate the capacity in which she has taken this appeal.

The facts disclosed by the record are in substance these: At a judicial sale of the estate of the late *William R. Faulkner*, of which the appellant, his widow, was the administratrix, made on the 1st of July, 1843, a tract of land was ad-

SUCCESSION OF
JEWELL.

judicated to *Joseph Jewell* for the price of $768, payable, according to the terms of sale, at one, two and three years from the date thereof; the purchaser to give his notes, with good security, and to bear ten per cent. interest from maturity until paid.

*Jewell* signed the proces verbal of adjudication, but did not comply with the terms of sale by giving his notes. No steps appear to have been taken by the appellant, during her administration, to compel him either to do so, or to pay the price of adjudication. In the final settlement of the estate of her deceased husband, she was charged with the amount of this adjudication, which she now claims as a *subrogee* of his estate.

The appellee relies on the prescription of five and ten years as a bar to the action.

The purchaser having failed to comply with the terms of his contract, by giving his promissory notes, we are of opinion that the only prescription applicable is the prescription of ten years. See the case of *Burton* v. *Chancy*, 3 An., 338. The *Widow Faulkner* filed her opposition to the tableau in September, 1855. It is, therefore, clear that the third instalment of the price of the adjudication cannot be extinguished by prescription. But in regard to the others it is different, unless an interruption has taken place, as contended for by the appellant.

According to the ruling of this court in the case of *Lackey* v. *Macmurdo*, 9 An., 15, we think the acknowledgment of *Joseph Jewell*, during his lifetime, as shown by the testimony, is insufficient to bind his estate. The substance of that acknowledgment appears to be, that he would "settle, provided his claims were allowed." What those claims were, it is true, does not appear. But it is evident that his acknowledgment, qualified as it is, amounts at most to this, that he was willing to settle the price of adjudication on condition that his claims against the estate of *Faulkner*, would be allowed in compensation; in other words, he did not acknowledge his indebtedness to the appellant for the amount of her claims.

It is, therefore, ordered and decreed, the judgment of the court below be avoided and reversed, that the plea of prescription be maintained as to the first two instalments of the price of the adjudication, and overruled in the last instalment of the price, viz: the sum of $256, with ten per cent. interest from the 1st July, 1846, and that the case be remanded for further proceeding to be had herein according to law.