(126 So. 684)

## LA DEL OIL PROPERTIES, Inc., v. MAGNOLIA PETROLEUM CO.

### No. 30125.

Feb. 3, 1930.

Rehearing Denied March 5, 1930.

Pugh, Grimmet & Boatner, Yandell Boatner, and J. N. Marcantel, all of Shreveport, for appellant.

McHenry, Montgomery, Lamkin & Lester, of Monroe, for appellee.

LAND, J.

This is an action in jactitation brought by La Del Oil Properties, Inc., against Magnolia Petroleum Company, in which plaintiff claims the ownership, including oil and gas and other minerals, of the S. ½ of N. W. ¼, S. W. ¼ of N. E. ¼, and N. W. ¼ of N. W. ¼ of section 1, township 19 north, range 4 east, Ouachita parish, in this state.

Plaintiff alleges peaceful possession of the property for one year prior to the institution of this suit, and avers that defendant company has slandered plaintiff's title by moving a rig on part of the property and commencing drilling operations.

Defendant, Magnolia Petroleum Company, also claims in its answer the ownership of the oil and gas and other minerals in and under the property in question.

Both claimants rely upon titles acquired through mesne conveyances from Central Immigration, Real Estate & Loan Company, which reserved, in the sale of date May 7, 1913, made by that company to Luther M. Fairbanks, "the oils, gases, and other minerals, with exclusive right to explore" in all of section 1, and in about half of the 18,146 acres included in that sale.

Plaintiff, La Del Oil Properties, Inc., claims fee-simple title to the property in dispute, under deed from James A. Evans of date December 23, 1918.

Defendant, Magnolia Petroleum Company, claims title to the oil, gas, and other minerals, with right to explore, from Fortuna Oil Company under deed of date March 1, 1926.

Plaintiff alleges in its petition that section 1 is not contiguous to any part of the property in which the minerals were reserved.

That there has been no drilling on section 1 within ten years from May 7, 1913, the date of the deed from Central Immigration, Real Estate & Loan Company to Luther M. Fairbanks.

That the land in dispute has been relieved of the servitude created by the reservation of the minerals in the deed to Fairbanks, by reason of the failure of Central Immigration, Real Estate & Loan Company, the owner, to develop the land for minerals, and pleads prescription of ten years under articles 789, 3529, and 3546 of the Civil Code.

The defendant, Magnolia Petroleum Company, admits in its answer that section 1 is not contiguous to any other part of the property in which the minerals were reserved, and that there has been no drilling on this section within ten years from May 7, 1913.

However, defendant company sets up in its answer that the prescription of ten years liberandi causa pleaded by plaintiff was interrupted, under article 3520 of the Civil Code, by acknowledgment of the servitude by the owner, and began to run anew by virtue of the provision contained in the contract and lease entered into on August 25, 1916, by Luther M. Fairbanks, the owner, with one John R. Bondurant.

The provision, upon which defendant company relies as an acknowledgment by the

owner interrupting prescription, reads as follows: " * * * Then L. M. Fairbanks shall convey at once to J. R. Bondurant the title in perpetuity to all of the oil, gas, coal and other mineral rights in and under the property purchased on the 7th day of May, 1913, by L. M. Fairbanks from Central Immigration, Real Estate and Loan Company, Ltd., *except such portions as have already been sold* by L. M. Fairbanks at private sale *and reserved in the deed* to L. M. Fairbanks from Central Immigration, Real Estate and Loan Company, Ltd." (Italics ours.)

It is clear that there are two reservations contained in the above contract and lease:

First. The exception made of "such portions" of the minerals as had already been sold by Fairbanks, the vendor, to third persons.

Second. The exception made of all the minerals reserved by Central Immigration, Real Estate & Loan Company in the deed from that company to L. M. Fairbanks of date May 7, 1913.

We have already observed that this deed conveyed to Fairbanks 18,146 acres of land, and that Central Immigration, Real Estate & Loan Company, as vendor, had reserved to itself all oils, gases, and other minerals, in and under one-half of these lands, with the right to develop the minerals.

What did Fairbanks intend to convey to Bondurant? Plainly, nothing *but his title* to all of the minerals in and under the lands, *the full ownership* of which he had acquired in the deed to himself from Central Immigration, Real Estate & Loan Company of date May 7, 1913.

It is clear that Fairbanks took pains to except from the deed made by him to Bondurant *all the minerals that he did not own*. In so doing, Fairbanks acted prudently, as any oth-

er vendor would have done, and clearly with the intention of protecting himself against warranty of title to the purchaser of minerals which the vendor knew belonged to third persons.

In fact, it would not have been possible for Fairbanks, or any other vendor, to have made the transfer to Bondurant, or to any one else, in any other manner and to have fully protected himself against the recourse of the purchaser, in the event of eviction by a third person to whom the minerals might belong. In our opinion, these reservations were made with no other intention on the part of the owner.

In the recent case of Lewis v. Bodcaw Lumber Company of Louisiana, 167 La. 1067, 120 So. 859, 860, after reviewing all of the authorities upon which defendant company relies in the present case, we came to the deliberate conclusion that a mere acknowledgment in a deed that the land was sold subject to the reservation of mineral rights in the deed to another did not interrupt the prescription of ten years, which was then accruing against the mineral rights so reserved.

In the Bodcaw Lumber Co. Case, the reservation read: " * * * Except that this sale is made subject to the mineral reservation made by the Bodcaw Lumber Company of Louisiana when they deeded the land herein to this vendor, as per deed recorded in Vol. 29, page 142."

In the case at bar the reservation reads: " * * * Except such portions as have already been sold by L. M. Fairbanks at private sale, and reserved in the deed to L. M. Fairbanks from Central Immigration, Real Estate and Loan Company, Ltd."

We fail to see any real distinction between the language contained in these two reservations, since it is equally as clear, in the one case as in the other, that the vendor intended to sell the property subject to the mineral reservations excepted in the deed.

The Bodcaw Lumber Company Case is sound in principle, is the latest expression of the court on the subject, and is supported by numerous decisions of this court, as well as by the French jurisprudence.

Article 3520 of the Civil Code declares that: "Prescription ceases likewise to run whenever the debtor, or possessor, makes acknowledgment of the right of the person whose title they prescribed."

In construing this article, the Supreme Court of this state has held repeatedly that "the acknowledgment, in order to interrupt prescription, must be specific;" that "unless the acknowledgment be clear and precise, courts cannot consider it;" and that "a simple recognition neither disposes of nor changes the state of the thing," as said by Dumoulin.

Conger v. City of New Orleans, 32 La. Ann. 1254; Courtebray v. Rils, 9 Rob. 511; Conway v. Williams' Administrator, 10 La. 568, 29 Am. Dec. 466; Elliott v. Brown, 13 La. Ann. 579; Lackey v. Macmurdo, 9 La. Ann. 15; Succession of Jewell, 11 La. Ann. 83; New Orleans & Carrollton R. Co. v. Harper, 11 La. Ann. 212; Tyson v. McGill, 15 La. 145.

The simple acknowledgment or recognition by the owner, Fairbanks, of the mineral reservation of Central Immigration, Real Estate & Loan Company, in the contract and lease from Fairbanks to Bondurant, did not dispose of nor change the state of the servitude. For it is well settled that the acknowledgment of a debt—and a servitude is no more than a debt—in order to interrupt prescription, must be specific, and, unless the ac-

knowledgment is clear and precise, the courts cannot consider it as having the effect of interrupting prescription. We therefore expressly reaffirm in this case the doctrine announced by this court in the Bodcaw Lumber Company Case, 167 La. 1067, 120 So. 859.

It is conceded that the land in dispute had not been drilled within 10 years from the date of the deed from Central Immigration, Real Estate & Loan Company to Fairbanks. This prescription was not interrupted by the later reservation of these minerals in the contract and lease from Fairbanks to Bondurant, and, therefore, had fully run when defendant, Magnolia Petroleum Company, obtained title from Fortuna Oil Company, March 1, 1926. The servitude had become extinct by nonuser on May 7, 1923, and the minerals, with right to exploit, reverted to the plaintiff, La Del Oil Properties, Inc., which had acquired a fee-simple title to the property in dispute from James A. Evans, under deed of date December 23, 1918, Rev. Civ. Code, arts. 789, 3529, 3546.

The Palmer Corporation began drilling operations on the S. ½ of S. W. ¼ of section 1, township 19 north, range 4 east, on or about July 7, 1926, and completed a producing gas well on the property on or about August 5, 1926.

It is contended by defendant, Magnolia Petroleum Company, that, as the Palmer Corporation acquired the right to explore the S. W. ¼ of section 1, township 19 north, range 4 east, through mesne conveyance or assignment from Central Immigration, Real Estate & Loan Company, the drilling of this well interrupted the prescription of ten years liberandi causa relied upon by plaintiff.

The S. W. ¼ of this section is not involved in this litigation. Nor is there any privity of contract, as far as the record shows, between the Palmer Corporation and defendant company in so far as the S. W. ¼ of this section is concerned. Besides, defendant company has admitted in its answer that there had been no drilling on section 1, which is not contiguous to any other part of the property, within ten years from May 7, 1913, the date of the deed from Central Immigration, Real Estate & Loan Company to Fairbanks.

In addition to this, prescription had already accrued on May 7, 1923, and the Palmer Corporation well was not commenced thereafter until on or about July 7, 1926. We find no merit in this contention.

Judgment was rendered in the lower court in favor of plaintiff, decreeing that defendant had slandered plaintiff's title to the property involved in this suit, and restoring and quieting the possession of plaintiff.

The judgment further ordered that the deed from Fortuna Oil Company to the defendant, Magnolia Petroleum Company, of date March 1, 1926, be canceled and erased from the records of Ouachita parish, as well as the reservation of the minerals referred to in the deed from Central Immigration, Real Estate & Loan Company to Luther M. Fairbanks, of date May 7, 1913, in so far as the property in this suit was concerned.

We find no error in the judgment appealed from.

Judgment affirmed.